UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRISCILLA YORK and
ALTON YORK,

                Plaintiffs,

vs.                                               Case No.: 8:08-CV-380-T-27TBM

MEDCO HEALTH SOLUTIONS OF
NETPARK, LLC,

                Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Medco Health Solutions of Netpark, LLC's ("Netpark") Motion for Final Summary Judgment (Dkt. 29), to which Plaintiffs have responded in opposition (Dkt. 36). Upon consideration, Defendant's motion is DENIED.

Defendant contends that this action is barred by New Jersey's "entire controversy doctrine." On October 13, 2005, Plaintiffs filed suit in New Jersey state court (Bergen County Case L-7141-05), against two defendants not parties to this action, Medco Health Solutions, Inc. and Merck and Company, Inc., alleging claims for negligence and loss of consortium. (Dkt. 14, Exh. 1, ¶¶ 10-11, 1-3; Exh. 1). That complaint alleged that Priscilla York forwarded a prescription for Accupril to Medco to fill and that Medco, a subsidiary of Merck, negligently filled the prescription with the drug Aricept. (Dkt. 14, Exh. 1, ¶ 5). The complaint alleged that the error was discovered on October 14, 2003, and that the action was timely. (Dkt. 14, Exh. 1, ¶¶ 8, 9).

Merck and Medco ultimately prevailed on their motion for summary judgment in the New Jersey action on their contention that Plaintiffs' claims were barred by Tennessee's one-year statute

1

of limitations, where Plaintiffs allegedly sustained their damages. (Dkt. 14, Exh. 5 at 36).

In this action, Plaintiffs assert substantially the same claims for negligence and loss of consortium against Netpark, based on the same incident (Dkt. 2). Plaintiffs allege that Mrs. York mailed her prescription of Accupril to Medco Health Solutions of Las Vegas, Inc. ("MHS of Las Vegas"), which was forwarded to Netpark for review by its pharmacist. (Compl., ¶ 4). Plaintiffs allege that Netpark's pharmacist instructed MHS of Las Vegas to fill the prescription with Aricept, which it did on that occasion and two subsequent occasions. (*Id.*) Although Plaintiffs allege that Mrs. York was hospitalized on October 14, 2003, it alleges that "Mrs. York did not learn of the mistake by Netpark until July, 2006." (Compl., ¶ 5).

In its motion for summary judgment, Netpark argues that Mrs. York learned of mis-filled prescription in during the pendency of the New Jersey action, by virtue of the defendants' answers to interrogatories, which stated:

> The Plaintiff's prescription was then forwarded by MHS of Las Vegas to Medco Health Solutions of Netpark, LLC ("MHS of Netpark") to be reviewed by a pharmacist. Pharmacist David Hill, MHS of Netpark, reviewed the Plaintiff's prescription, and the prescription was transferred to MHS of Las Vegas for fulfillment and dispensing of Aricept to the Plaintiff. (Dkt. 1-10 at 5).

Netpark argues that any claims against Netpark could have and should have been brought in the New Jersey action pursuant to New Jersey's entire controversy doctrine. Netpark maintains that Plaintiffs' failure to join it as a defendant in the New Jersey action caused it substantial prejudice. For the reasons discussed, Netpark has failed to demonstrate substantial prejudice or inexcusable conduct on the part of Plaintiffs.

### *Standard*

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to

2

interrogatories, affidavits, and admissions on file, there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. All evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

### *Discussion*

Where, as here, a federal court is asked to give *res judicata* effect to a prior state court judgment, it must be determined whether the state in which the order was rendered would give preclusive effect to that order through the operation of that state's law of *res judicata*. *Tuscano v. Evening Journal Ass'n,* 179 F. App'x 621, 626 (11th Cir. 2006); *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (internal quotations omitted). Because Netpark contends that the New Jersey judgment bars this action, New Jersey principles of *res judicata* apply. *Id.*

"Under New Jersey law, *res judicata* has the purpose of preventing re-litigation of the same controversy between the same parties." *Tuscano v. Evening Journal Ass'n,* 179 Fed.Appx. at 626, citing *Brookshire Equities, LLC v. Montaquiza*, 346 N.J.Super. 310, 318, 787 A.2d 942, 947 (App.Div.2002). For *res judicata* to apply, there must be: "(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." *Id.* Defendant does not contend that there is an identity of parties. Rather, Defendant contends that New Jersey's "entire controversy doctrine" precludes this action, based on the prior New jersey summary judgment order.

New Jersey's "entire controversy doctrine," "stems directly from the principles underlying

3

the doctrine of *res judicata* or claim preclusion." *Prevratil v. Mohr*, 145 N.J. 180, 187, 678 A.2d 243, 246 (N.J. Sup. Ct. 1996) (citing N.J. Const. art. VI, sec. 2, ¶ 4). Pursuant to that doctrine, all claims arising from a single controversy must be brought in a single action "at the risk of being precluded from asserting them in the future." *In re Estate of Gabrellian*, 372 N.J.Super. 432, 444, 859 A.2d 700, 707 (App.Div.2004). Similar to claim preclusion, the doctrine seeks "to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy." *Olds v. Donnelly*, 150 N.J. 424, 431, 696 A.2d 633, 637 (N.J. Sup. Ct. 1997). "[T]he determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." *DiTrolio v. Antiles*, 142 N.J. 253, 271, 662 A.2d 494, 504 (N.J. Sup. Ct. 1995).

Prior to 1998, the doctrine had two aspects: claims joinder, which "required that parties should present all affirmative claims and defenses arising out of a controversy," and party joinder, which required "mandatory joinder of all parties with a material interest in the controversy." *Olds*, 150 N.J. at 431-32, 696 A.2d at 637; *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 26, 560 A.2d 1169, 1178 (N.J. Sup. Ct. 1989). The rule was amended in 1998 to eliminate mandatory party joinder and to clarify that "preclusion of a successive action against a person not a party to the first action has been abrogated except in situations involving both inexcusable conduct and ... substantial prejudice to the non-party resulting from omission form the first suit." *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 242, 806 A.2d 810, 817 (N.J. Super. Ct. App. Div. 2002) (quoting Pressler, <u>Current N.J. Court Rules</u>, Comment 1 on <u>R</u>. 4:30A (2002)). The party asserting the doctrine has the burden of proving both inexcusable conduct and substantial prejudice. *Id.* at

242, 806 A.2d at 817-18.[1]

Even though the party invoking the doctrine must prove both, substantial prejudice can establish that the non-joinder was inexcusable. *Id.* at 243-44, 806 A.2d at 817-19. A list of non-exhaustive factors from *Hobart* are considered when determining whether the non-joinder caused substantial prejudice. *Id.* These factors include:

> (1) whether the person not joined in an earlier action is precluded from seeking recovery in a subsequent action; (2) whether a person so precluded can nevertheless be alternatively compensated; (3) whether the failure to join or identify . . . a person was part of a strategy to thwart the assertion of a valid claim; (4) whether the failure to join or identify a person was unreasonable under the circumstances; (5) whether a person not joined in an action should be charged with constructive knowledge of that action; (6) the extent to which judicial resources were employed in the earlier action; and (7) whether a person not joined in an earlier action might be unfairly hampered in their ability to mount a defense, e.g., due to loss of evidence, the running of an applicable period of limitations or other prejudice. *Ctr. for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004).

In this case, the first two factors are inapplicable because Netpark is defending this action rather than seeking recovery. As for the third factor, Netpark presents no evidence of a clear plan or strategy on the part of the Plaintiffs to deliberately delay asserting their claims against Netpark. As for the fourth factor, Plaintiff's failure to join Netpark has not been shown to have been unreasonable. Indeed, as a threshold matter, Plaintiffs contend that Netpark was not subject to jurisdiction in New Jersey, alleging in the complaint that Netpark is domiciled in Florida and that the claimed negligence occurred in Florida. Defendant does not contend that it would have been subject to jurisdiction in new Jersey when the New Jersey suit was filed. In this summary judgment

---

[1] Parties invoking the entire controversy doctrine have met resistance because of the difficulty in proving inexcusable conduct and substantial prejudice. *Gleason Design Assoc. Inc. v. Pizzelli Assoc. Inc.*, 2008 WL 5083604 (N.J. Super. Ct. App. Div. Dec. 4, 2008); *Hobart Bros. Co. V. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 806 A.2d 810 (N.J. Super. Ct. App. Div. 2002); *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C.*, 321 N.J. Super. 275, 728 A.2d 857 (N.J. Super. Ct. App. Div. 1999); *Ctr. for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150 (D.N.J. 2004).

setting, all reasonable factual inferences are viewed in the light most favorable to Plaintiffs, the non-moving parties. *Adickes v. S.H. Kress & Co., supra.* Accordingly, Defendant cannot show substantial prejudice or inexcusable conduct under these circumstances.

The fifth factor addresses whether Netpark had constructive knowledge of the previous action. Neither party has addressed Netpark's knowledge of the New Jersey action. The sixth factor, concerning the use of judicial resources, weighs somewhat in favor of Netpark because the entire controversy doctrine is "intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter." *Hobart*, 354 N.J. Super. at 240-41, 806 A.2d at 816-17 (quoting *Oltremare v. ESR Custom Rugs, Inc.*, 330 N.J. Super 310, 315, 749 A.2d 862 (N.J. Super. Ct. App. Div. 2000)). In the New Jersey action, the defendants successfully defended based on Tennessee's one-year statute of limitations. That result may very well be duplicated here, to the extent Florida's choice of law requires application of Tennessee's statute of limitations. Notwithstanding, this potential consequence is not controlling.

Finally, the seventh factor is whether Netpark has been unfairly prejudiced. Netpark argues that by not being joined in the New jersey action, it did not have an opportunity to join in the motion for summary judgment and the defenses raised by Medco and Merck. While this may be true, Netpark has not demonstrated that it would now be foreclosed from raising those same potential defenses, including the statute of limitations. *See Gleason Design Assoc. Inc. v. Pizzelli Assoc. Inc.*, 2008 WL 5083604 at *7 (N.J. Super. Ct. App. Div. Dec. 4, 2008)(defendant's inability to demonstrate how it was unable to maintain a defense was reason to conclude that it had not suffered a substantial prejudice). A similar argument was rejected in *Gleason*, where the court determined

setting, all reasonable factual inferences are viewed in the light most favorable to Plaintiffs, the non-moving parties. *Adickes v. S.H. Kress & Co., supra.* Accordingly, Defendant cannot show substantial prejudice or inexcusable conduct under these circumstances.

The fifth factor addresses whether Netpark had constructive knowledge of the previous action. Neither party has addressed Netpark's knowledge of the New Jersey action. The sixth factor, concerning the use of judicial resources, weighs somewhat in favor of Netpark because the entire controversy doctrine is "intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter." *Hobart*, 354 N.J. Super. at 240-41, 806 A.2d at 816-17 (quoting *Oltremare v. ESR Custom Rugs, Inc.*, 330 N.J. Super 310, 315, 749 A.2d 862 (N.J. Super. Ct. App. Div. 2000)). In the New Jersey action, the defendants successfully defended based on Tennessee's one-year statute of limitations. That result may very well be duplicated here, to the extent Florida's choice of law requires application of Tennessee's statute of limitations. Notwithstanding, this potential consequence is not controlling.

Finally, the seventh factor is whether Netpark has been unfairly prejudiced. Netpark argues that by not being joined in the New jersey action, it did not have an opportunity to join in the motion for summary judgment and the defenses raised by Medco and Merck. While this may be true, Netpark has not demonstrated that it would now be foreclosed from raising those same potential defenses, including the statute of limitations. *See Gleason Design Assoc. Inc. v. Pizzelli Assoc. Inc.*, 2008 WL 5083604 at *7 (N.J. Super. Ct. App. Div. Dec. 4, 2008)(defendant's inability to demonstrate how it was unable to maintain a defense was reason to conclude that it had not suffered a substantial prejudice). A similar argument was rejected in *Gleason*, where the court determined

that the plaintiff was not substantially prejudiced simply because it was unable to participate in the settlement agreements in the prior suit. 2008 WL 5083604 at *7.

While, as Netpark points out, Plaintiffs knew of Netpark's involvement in the filling of the prescription months before the motion for summary judgment was granted in the New Jersey action, Netpark has not demonstrated a loss of evidence or that it is foreclosed from raising any defenses available in that action in this action. As for Netpark's contention that it will be forced to incur the "additional" expense of defending this action, increased expenses of litigation do not constitute substantial prejudice under the entire controversy doctrine. *Ctr. for Prof'l Advancement*, 347 F. Supp. 2d at 158.

*Conclusion*

The "fairness to the parties" and the "fairness to the system of judicial administration" must be weighed in determining whether there was inexcusable conduct and substantial prejudice. *Hobart*, 806 A.2d at 819 (citing *Vision Mortgage Corp. v. Chiapperini, Inc.*, 156 N.J. 580, 584, 722 A.2d 527, 529 (N.J. Sup. Ct. 1999)). Significantly, "preclusion is a remedy of last resort." *Id.* Here, a balancing of the equities weighs against Netpark. Netpark has failed to demonstrate that it was substantially prejudiced by not being joined in the New Jersey action or that Plaintiffs's failure to join Netpark was inexcusable. Accordingly, Netpark's Motion for Final Summary Judgment (Dkt. 29) is **DENIED**.

**DONE AND ORDERED** in chambers this 6th day of March, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record